UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

SARAH H. o/b/o D.R.,[1]

                              Plaintiff,            Case # 20-CV-1736-FPG

v.                                                  DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

## INTRODUCTION

On August 7, 2017, Plaintiff Sarah H., on behalf of claimant, D.R., a minor under eighteen years of age, protectively applied for Children's Supplemental Security Income Benefits under Title XVI of the Social Security Act (the "Act"). Tr.[2] at 20. The Social Security Administration (the "SSA") denied the claim and Plaintiff appeared at a hearing before Administrative Law Judge Susan Smith on December 9, 2019. Tr. 20. Plaintiff testified at the hearing. On January 23, 2020, the ALJ issued an unfavorable decision. Tr. 25. The Appeals Council denied review, making the ALJ's decision the final decision of the SSA. Tr. 10. Plaintiff then appealed to this Court.[3] ECF No. 1.

The parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 8, 9. For the reasons that follow, Plaintiff's motion is GRANTED IN PART and DENIED IN PART, the Commissioner's motion is GRANTED IN PART and DENIED IN PART, and the ALJ's decision is REMANDED to the Commissioner for further administrative proceedings.

---

[1] In order to better protect personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff using only her first name and last initial in accordance with this Court's Standing Order issued November 18, 2020.

[2] "Tr." refers to the administrative record in this matter. ECF No. 6.

[3] The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

**LEGAL STANDARD**

I.     **District Court Review**

When it reviews a final decision of the SSA, it is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the Court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. §§ 405(g), 1383(c)(3)) (other citation omitted). The Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3).   "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).

II.     **Children's Disability Determination**

A child under 18 is disabled under section 1614(a)(3)(C)(i) of the Social Security Act if he or she has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  In denying Plaintiff's application, the ALJ evaluated the claim under the Social Security Administration's three-step evaluation process to determine whether an individual under the age of 18 is disabled.  *See* 20 C.F.R. § 416.924(a).

At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity ("SGA"), defined as work activity that is both substantial and gainful. *Id*. § 416.972. "Substantial work activity" involves significant physical or mental activities.  *Id*. § 416.972(a). "Gainful work activity" is work usually done for pay or profit, whether or not profit is

realized.  *Id*. § 416.972(b). If the claimant is engaged in SGA, the claimant is not disabled regardless of medical condition, age, education, or work experience.  *Id*. § 416.924(b). If the claimant is not engaged in SGA, the ALJ proceeds to the next step.  *Id*.

At step two, the ALJ must determine whether the claimant has a medically determinable impairment, or combination of impairments, that is "severe."  *Id*. § 416.924(a).  For a claimant under the age of 18, a medically determinable impairment or combination of impairments is not severe if it is a slight abnormality or a combination of such abnormalities that causes no more than minimal functional limitations. *Id*. § 416.924(c).  If the claimant has a severe impairment, the ALJ proceeds to the third step; if not, the claimant is not disabled.  *Id*. § 416.924(a).

At step three, the ALJ must determine whether the impairment or combination of impairments meet, medically equal, or functionally equal an impairment in the listings.  *Id*. § 416.924(d).  If the claimant has an impairment or combination of impairments that meet, medically equal, or functionally equal the severity of one in the listings, and if such impairments have lasted or are expected to last for a continuous period of at least 12 months, then the claimant is disabled; if not, then the claimant is not disabled.  *Id*. § 416.924(d).

To determine whether impairments meet or medically equal one in the listings, the ALJ compares the limitations to explicit criteria in the listings.  20 C.F.R § 416.925.

To determine whether impairments functionally equal one in the listings, the ALJ assesses the claimant's functioning in six separate "domains": (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. *Id*. § 416.926a(b)(1).  That assessment compares how the child performs in each of these domains with the typical functioning of a child of the same age without impairment.  *Id*. § 416.926a(b).  The

child's impairment functionally equals a listing if there are "marked" limitations in at least two domains or an "extreme" limitation in one domain. *Id*. § 416.926a(d). In determining whether impairments are "marked" or "extreme," the ALJ considers functional limitations that result from all impairments, including impairments that have been deemed not severe, and their cumulative effects. *Id*. §§ 416.923, 416.924a(b)(4), 416.926a(a), (c), & (e)(1)(i).

A "marked" limitation results when impairments "seriously interfere with [the child's] ability to independently initiate, sustain, or complete activities." *Id*. § 416.926a(e)(2)(i). A "marked" limitation is "more than moderate" but "less than extreme." *Id*. On a standardized test designed to measure abilities within a certain domain, a "marked limitation" means a score of at least two, but less than three, standard deviations below the mean and a level of day-to-day functioning consistent with that score. *Id*. §§ 416.926a(e)(2)(i), 416.926a(e)(2)(iii). For example, in the domain of "health and well-being," a child is considered to have a "marked" limitation if he or she is frequently ill as a result of his or her impairments or exhibits frequent worsening of symptoms resulting in medically documented exacerbations. *Id*. § 416.926a(e)(2)(iv). "Frequent" means episodes that occur on average every four months and lasting two weeks or more, or more often than three times a year but lasting less than two weeks, or less often but of overall equivalent severity. *Id*.

An "extreme" limitation, on the other hand, results when impairments "interfere [] very seriously with [the child's] ability to independently initiate, sustain, or complete activities." *Id*. § 416.926a(e)(3)(i). An "extreme" limitation is one that is "more than marked." *Id*. The ALJ will determine a limitation to be "extreme" when a comprehensive standardized test designed to measure functioning in a particular domain results in a score of three or more standard deviations below the mean and day-to-day functioning consistent with that score. *Id*. § 416.926a(e)(3)(iii).

In the domain of "health and well-being," for example, the ALJ will consider a child to have an "extreme" limitation if the child is frequently ill or if impairments frequently become exacerbated, resulting in medically documented symptoms significantly more than those of a "marked" limitation. *Id*. § 416.926a(e)(3)(iv); *see Gonzalez o/b/o J.A.M. v. Saul*, No. 18-CV-6240, 2019 WL 3891021, at *2 (W.D.N.Y. Aug. 19, 2019).

## DISCUSSION

### I.     The ALJ's Decision

The ALJ analyzed claimant's claim for benefits using the process described above. At step one, the ALJ found that claimant had not engaged in substantial gainful activity since July 12, 2017, the alleged onset date. Tr. at 21. At step two, the ALJ found that claimant has the following severe impairments: a speech delay, developmental delay (fine motor skills), and lead poisoning. Tr. 21. At step three, the ALJ found that the claimant does not have an impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments. *Id*. Turning to the six domains of functioning, the ALJ determined that claimant had a "less than marked" limitation in each category, including "Acquiring and Using Information," "Attending and Completing Tasks," "Interacting and Relating with Others," "Moving About and Manipulating Objects," "Caring for Yourself," and "Health and Physical Well-Being." Tr. 22-23. Because claimant did not have at least two "marked" or one "extreme" limitation in the six domains of functioning, claimant's functional equivalence did not entitle him to disability benefits. *Id*.

### II.    Analysis

Plaintiff argues that (i) the ALJ erred in his evaluation of claimant's functional equivalence because the ALJ found claimant did not receive "special education," and (ii) the Appeals Council erred in rejecting a questionnaire completed by claimant's teacher when the Council denied

claimant's request for review.  ECF No. 8-1 at 2.  For the reasons explained more fully below, the Court rejects Plaintiff's first argument but agrees with her second argument.  Because the Appeals Council improperly rejected claimant's additional evidence, the matter is remanded for further administrative proceedings consistent with this opinion.

### A.  The ALJ's Evaluation of Claimant's Functional Equivalence

Plaintiff contends that the ALJ incorrectly concluded that claimant received "no special education," failed to properly consider the educational accommodations claimant received, and accordingly assigned an incorrect functional equivalence to claimant.  ECF No. 8-1 at 7.  Because the record indicates that (i) substantial evidence supports the ALJ's conclusion that claimant did not receive special education and (ii) the ALJ properly considered claimant's actual educational accommodations and "supportive setting" in his determination of claimant's functional equivalence, this aspect of Plaintiff's motion is denied.

In evaluating a claimant's functional equivalence, an ALJ should consider whether the claimant has limitations and restrictions because of medically determinable impairment(s), *see* 20 C.F.R. §416.924a(b)(3)(i), the severity of which will be determined by evaluating, *inter alia*, the kinds of help or support a child needs to function.  SSR 09-3p, 2009 WL 396025, at *XX  (Feb. 17, 2009).  An ALJ must consider a claimant's supportive settings when evaluating a child's ability to functional normally.  20 C.F.R. § 416.924a(b)(5); *see also Archer ex rel. J.J.P. v. Astrue*, 910 F. Supp. 2d 411, 426-27 (N.D.N.Y. 2012).  Although the ALJ "need not make explicit reference to the effects of a structured or supportive setting," the SSA's regulations require the ALJ to consider the supportive setting.  *Smith ex rel. M.M.S. v. Comm'r of Soc. Sec.*, No. 16-CV-362, 2017 WL 3404760, at *5 (W.D.N.Y. Aug. 9, 2017).  A structured or supportive setting may minimize the claimant's signs and symptoms of impairment and improve his or her functioning

while he or she is in that setting, but the claimant's signs, symptoms, and functional limitations may worsen outside of that setting. 20 C.F.R. § 416.924a(b)(5)(iv)(C).  While an ALJ need not make "explicit reference" to the effects of a "structured or supportive setting" to be deemed to have considered them, *Shatraw ex rel. K.C.Y. v. Astrue*, No. 7:11-CV-13, 2012 WL 589667, at *4 (N.D.N.Y. Feb. 22, 2012), remand may be appropriate if it is evident that the ALJ did not consider this factor.  *Gonzalez ex rel. C.C. v. Astrue*, No. 07-CV-487, 2009 WL 4724716, at *6 (N.D.N.Y. Dec. 2, 2009).

Here, substantial evidence supports the ALJ's conclusion that claimant did not receive "special education," and properly considered the "supportive setting" claimant did participate in. The administrative record includes a Report of Contact, dated September 20, 2017, which reads: "Received call from Betty @ Buffalo Board of Ed. She states this student is not receiving special education."  Tr. 268.  Other evidence in the administrative record supports the ALJ's conclusion that claimant did not receive special education.  An Individualized Education Program Report, dated December 1, 2016, contains no evidence that claimant received special education and explicitly states that claimant had "no cognitive or academic needs that should be addressed through special education," nor any "social and emotional needs that should be addressed through special education," nor any speech or language needs that "should be addressed through special education."  Tr. 378-81, 444.  On December 7, 2017, another report indicated that claimant was "not eligible" to receive special education services and/or programs.  Tr. 448.

On November 6, 2017, an educational evaluation was prepared to determine if claimant "qualifies for services provided by the Committee on Preschool Education."  Tr. 451.  Claimant's overall cognitive/pre-academic skills were "within normal limits."  Tr. 452.  Another Individualized Education Report, dated April 16, 2019, stated that claimant was "not eligible" to

receive special education services and/or programs.  Tr. 507.  This April 2019 report was the most recent report prepared for claimant before claimant's administrative hearing before the ALJ on December 9, 2019.

In addition, to the extent Plaintiff claims that the ALJ failed to consider claimant's "supportive settings," as a separate matter distinct from whether claimant received "special education," the record shows that the ALJ considered and explicitly referenced claimant's "supportive settings" in his determination of claimant's functional equivalence.

In her decision, the ALJ observed that claimant "remains in a general education classroom but does receive both physical and occupational therapy weekly."  Tr. 24.  The ALJ relied upon a Psycho-Educational Evaluation prepared by the Buffalo Public Schools in making this assessment. Tr. 524.  The evaluation noted that claimant "participates in a general education setting with the related services of Occupational and Physical Therapy."  *Id*.  In addition, the ALJ observed earlier in her decision that claimant "was enrolled in occupational and speech therapy," but not special education.  Tr. 23.  Plaintiff contends, incorrectly, that the ALJ overlooked such programs, which constitute a "supportive or structured setting," and therefore misstated the record.  *See Watson ex rel. K.L.W. v. Astrue*, No. 07-CV-6417, 2008 WL 3200240, at *5 (W.D.N.Y. Aug. 5, 2008) (describing supportive settings and requirement that ALJ must consider their effect on claimant in evaluating claimant's functional equivalence).  While it is well settled that an ALJ may not "misstate the record" when determining whether a claimant is entitled to benefits, *see Caternolo v. Astrue*, No. 6:11-CV-6601, 2013 WL 1819264, at *13 (W.D.N.Y. Apr. 29, 2013); *see also Aragon-Lemus v. Barnhart*, 280 F. Supp. 2d 62, 70 (W.D.N.Y. 2003), the administrative record shows that the ALJ explicitly considered claimant's "supportive settings."  It is evident that the

ALJ considered this factor.  *See Gonzalez ex rel. C.C. v. Astrue*, No. 1:07-CV-487, 2009 WL 4724716, at *6 (N.D.N.Y. Dec. 2, 2009).  Remand, on this basis, is accordingly improper.

### B.  The Appeals Council's Rejection of Additional Evidence

Plaintiff contends that the Appeals Council erred in its evaluation of a teacher questionnaire Plaintiff submitted to the Council in September 2020 as part of Plaintiff's appeal of the ALJ's decision.  ECF No. 8-1 at 11.  The Commissioner argues that the Appeals Council properly concluded that "the additional evidence did not show a reasonable probability that it would change the outcome of [the ALJ's] decision."  ECF No. 9-1 at 10.  For the reasons set forth below, the Court agrees with Plaintiff.

On September 1, 2020—approximately nine months after the administrative hearing held on December 9, 2019—Plaintiff submitted to the Appeals Council a questionnaire completed by Ashley Bowersox, a teacher at claimant's elementary school, dated November 18, 2019.  Tr. 6. Bowersox claimed that claimant, with whom she had spent approximately 6.5 hours each day over a period of 2.5 months, had problems acquiring and using information, as well as attending and completing tasks.  Tr. 48-51.  Bowersox appears to have assessed claimant's limitations as more restrictive than determined by the ALJ.  *Id*.  In its denial of Plaintiff's request for review of the ALJ's decision, the Appeals Council stated that the questionnaire did "not show a reasonable probability that it would change the outcome of the decision."  Tr. 6.

Claimants are permitted to submit additional evidence to the Appeals Council so long as the evidence is "new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision".  20 C.F.R. § 416.1470(a)(5).  Effective January 17, 2017, after plaintiff's appeal, amendments to 20 C.F.R. § 416.1470 added a "good cause" requirement for claimants

seeking to submit additional records to the Appeals Council.  *See* 20 C.F.R. § 416.1470(b); *see also Redic v. Commissioner of Social Security*, No. 18-CV-6225-FPG, 2019 WL 1512556, *3 (W.D.N.Y. April 8, 2019) ("The Appeals Council must consider additional evidence that a claimant submits if the claimant can show good cause for not submitting it to the ALJ, it is new, material, and relates to the period on or before the ALJ's decision, and there is a reasonable probability that it would change the outcome of the decision.").  "Evidence is new if it is not cumulative of what is already in the record", and "[i]t is material if it is relevant to the claimant's condition during the time period for which benefits were denied and probative, meaning there is a reasonable probability that it would have influenced the Commissioner to decide the claimant's application differently."  *Pennetta v. Commissioner of Social Security*, No. 18-CV-6093-FPG, 2019 WL 156263, *3 (W.D.N.Y. Jan. 10, 2019).  "If the Appeals Council incorrectly finds that new evidence does not relate to the period at issue and erroneously declines to consider it, the proper course is to remand the case to the Commissioner for reconsideration in light of the new evidence."  *Norma P. v. Comm'r of Soc. Sec.*, No. 19-CV-774, 2021 WL 630904, at *3 (W.D.N.Y. Feb. 18, 2021) (internal quotation marks omitted).

In this case, the Commissioner does not dispute that the additional evidence is new and relates to the relevant period, nor that Plaintiff has "good cause" for not submitting the evidence earlier.  For these reasons, the Court does not address these elements.  The only question is whether "there is a reasonable probability" that the teacher's questionnaire "would have influenced the Commissioner to decide the claimant's application differently."  *Pennetta*, 2019 WL 156263, *3.

The Court has reviewed the content of the questionnaire and agrees with Plaintiff that it could reasonably be expected to change the ALJ's evaluation of functional equivalence and disability determination.  The questionnaire is inconsistent with the evidence the ALJ relied upon

in her disability determination.  Under the domain of "acquiring and using information," Bowersox opined that claimant had "a very serious problem" reading and comprehending written material, as well as expressing ideas in written form.  Tr. 47.  Bowersox further opined that claimant had a "serious problem" comprehending and doing math problems and recalling and applying previously learned material.  *Id*.  Claimant allegedly had an "obvious problem" in several related categories of learning.  *Id*.  In addition, under the domain of "attending and completing tasks," Bowersox opined that claimant had "a very serious problem" paying attention when spoken to directly, focusing long enough to finish tasks, refocusing, following multi-step and single-step instructions, and working without distracting himself or others.  Tr. 49.  Bowersox further opined that claimant had a "serious problem" organizing school materials, completing class/homework assignments, completing work accurately, and working at a reasonable pace/finishing on time.  *Id.*  All of the above problems in each domain occurred frequently—on an hourly basis—over a period of 2.5 months, according to Bowersox.  Tr. 47-49.  This evidence could reasonably call into question the ALJ's determination of "less-than-marked" functional equivalence in the domains of "acquiring and using information" and "attending and completing tasks."  ECF No. 8-1 at 16.

The Commissioner's argument to the contrary rests primarily upon the ALJ's evaluation of medical opinion evidence from state agency consultants that had determined that, with respect to the domain of "acquiring and using information," claimant had "no cognitive or academic needs that should be addressed through special education" and that, with respect to the domain of "attending and completing tasks," claimant demonstrated normal, cooperative behavior and had a "less than marked" restriction in that domain.  ECF No. 9-1 at 12-13.  To be sure, consultative examiners and state agency medical consultants are deemed to be highly qualified physicians who are experts in Social Security disability evaluations and an ALJ is entitled to rely upon their

opinions, which can also serve as substantial evidence. 20 C.F.R. § 416.913a(b)(1); *see also Petrie v. Astrue*, 412 F. App'x 401, 405 (2d Cir. 2011) (summary order) (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983)).  That said, as non-medical sources, or "other sources," teachers are "valuable sources of evidence for assessing impairment severity and functioning. Often, these sources have close contact with the individuals and have personal knowledge and expertise to make judgments about their impairment(s), activities, and level of functioning over a period of time."  SSR 06–03p, 2006 WL 2329939, at *3.  Furthermore, "under certain circumstances" a teacher's opinion may "properly be determined to outweigh the opinion from a medical source, including a treating source."  *Id.* at *6.  "[A] teacher's opinion cannot be dismissed solely because she is not an acceptable medical source, and instead the ALJ must consider all the relevant factors." *Smith v. Astrue*, 10-CV-53, 2011 WL 1113779, at *5 (N.D.N.Y Jan. 20, 2011) (ALJ's failure to properly evaluate the opinion of a child's teacher warranted remand).  Indeed, the reports of a child claimant's teacher should be "afforded significant weight" when the reporting teacher had an extended opportunity to observe the claimant's functioning.  *Titus ex rel. N.M.C. v. Colvin*, No. 3:12-CV-1056, 2014 WL 897038, at *9 (N.D.N.Y. Mar. 6, 2014) ("The Commissioner encourages the use of non-medical evidence provided by a teacher, who works with a child on a daily basis and observes him in a social setting with peers as well as adults.")).  Here, the additional evidence shows that Bowersox observed claimant on a daily, even hourly, basis for a period of approximately 2.5 months for approximately 6 hours per day.  This constitutes an "extended opportunity to observe claimant's functioning" to a degree that does not appear to be present in the remainder of the administrative record.  *Edmond*, 2006 WL 2769922 at *10.

Given Bowersox's intimate familiarity with claimant and the significant impairments she identified, the Appeals Council erred when it concluded that her questionnaire could not "have

influenced the Commissioner to decide [] claimant's application differently." *Pennetta*, 2019 WL 156263, *3.  Remand is therefore appropriate.  *Norma P.*, 2021 WL 630904, at *3.

The Court is mindful that nearly six years have passed since Plaintiff first applied for benefits on D.R.'s behalf and approximately three years since the ALJ's administrative hearing, at which D.R. was six years of age.  *See, e.g., Myers ex rel. C.N. v. Astrue*, No. 09-CV-1429, 2012 WL 4107453, at *11 (N.D.N.Y. Sept. 18, 2012) (noting that "the purpose of providing SSI benefits to children is to assist them while they are children" (alterations and citation omitted)); *Dabul-Montini ex rel. N.D. v. Astrue*, No. 09-CV-966, 2010 WL 3584348, at *11 (N.D.N.Y. July 30, 2010), *Report & Recommendation adopted*, 2010 WL 3584289 (Sept. 7, 2010) (holding that a near five-year delay warranted remand for calculation of benefits).  The Court is likewise cognizant of the reality that further delay may be "harmful [] particularly in connection with benefits for children."  *Brown ex rel. J.B. v. Colvin*, No. 1:12-CV-1062, 2015 WL 1647094, at *9 (W.D.N.Y. Apr. 14, 2015) (citation omitted).  Still, remand, not reversal, is appropriate at this time because the administrative record, with the addition of this new evidence, may yet compel a conclusion that claimant does not suffer a "marked" limitation in at least two domains.  20 C.F.R. § 416.926a(d); *Smith ex rel. M.M.S. v. Comm'r of Soc. Sec.*, No. 16-CV-362, 2017 WL 3404760, at *7 (W.D.N.Y. Aug. 9, 2017) (holding that reversal is appropriate where the "only conclusion that the record supports" is that claimant is disabled).  For these reasons, the Court remands this matter for consideration of Plaintiff's additional evidence.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings, ECF No. 8, is GRANTED IN PART and DENIED IN PART, the Commissioner's motion for judgment on the pleadings, ECF No. 9, is GRANTED IN PART and DENIED IN PART.  This matter is

13

REMANDED to the Commissioner for further administrative proceedings consistent with this

Decision & Order. The Clerk of Court shall enter judgment and close this case.

      IT IS SO ORDERED.

      Dated: March 10, 2023
             Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York

14